**Carolyn J. CLARK, Appellant,**

*v.*

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Aug. 3, 1990.

Permission to Appeal Denied by Supreme Court Oct. 29, 1990.

Michael J. Flanagan, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Donna J. Smith, Asst. Atty. Gen., Nashville, Guy Dotson, Dist. Atty. Gen., David Puckett, Asst. Dist. Atty. Gen., Murfreesboro, for appellee.

## OPINION

JONES, Judge.

This is an appeal as of right from a judgment of the trial court denying the appellant's application for post-conviction relief following an evidentiary hearing. The appellant contends that the trial judge committed error of prejudicial dimensions in denying her petition. She argues that the two convictions she challenges in this proceeding are constitutionally infirm because she was not adequately advised of her constitutional rights when she entered her pleas of guilty; and she was not competent to enter the pleas.

The judgement of the trial court is affirmed.

## FACTUAL BACKGROUND

On March 31, 1975, the appellant entered pleas of guilty to two counts of making and passing an imitation check. The trial judge sentenced the appellant to serve three (3) years in the Department of Correction in each case. The trial judge ordered that the two sentences were to be served consecutively to each other as well as consecutively to the sentences she was serving.[1] The sentences imposed were part of a plea bargain agreement which was reached after the District Attorney General talked with the appellant as well as the attorney appointed to represent her.

It appears from the transcript of the sentencing hearing that the appellant executed a written waiver form that embraced the right to trial by jury, the right to file a motion for a new trial, and the right to appeal her convictions to this Court. The parties stipulated as to the facts surrounding both offenses.

---

1. The appellant advised the trial judge she was confined to the Department of Correction as a result of convictions in White and Dekalb counties.

The colloquy between the trial judge and the appellant revealed that the appellant was twenty-nine years of age and the mother of five children. As previously stated, she was an inmate in the Department of Correction when she entered the guilty pleas and was sentenced. Also, there were several state and federal prosecutions pending against her. When asked what she did with the $11,500 she obtained from the bank, she told the trial judge the funds were used to purchase illicit narcotics, obtain the release of her friends from jail, and her friends helped her "make away with it". She was on probation when she committed the offenses in question.

The appellant acknowledged that the facts related by the District Attorney General were accurate, she was aware of the minimum and maximum punishment for the offense, the nature of the offense, and the meaning of a plea of guilty. She also stated that she was waiving her rights to file a motion for a new trial and appeal. The trial judge explained to the appellant that she had a right to trial by jury, the right to require the State to present evidence, and the right to cross-examine the witnesses presented by the State. Both the trial judge and the District Attorney General gave the appellant every opportunity to ask questions if there was anything about the proceedings she did not understand. She did not ask any questions.

The transcript of the sentencing hearing reveals that the appellant freely admitted her guilt, and she voluntarily, understandingly and knowingly entered the guilty pleas in question. Moreover, the appellant does not challenge the fact that the pleas of guilty were freely and voluntarily entered.

## POST–CONVICTION PROCEEDINGS

The appellant was indicted for the commission of an offense in Davidson County. A count of the indictment charged that she was a habitual criminal. The convictions challenged in this proceeding were alleged as predicate offenses in the habitual criminal count. The appellant subsequently instituted this proceeding to challenge the validity of these convictions.

When this suit was set for an evidentiary hearing, private counsel advised the trial judge that the appellant waived her appearance. No evidence was offered by either party. The transcript of the guilty plea proceedings and an order from White County were marked as exhibits by agreement. Counsel stated during the hearing:

> ... [T]he transcript of the plea—in looking through it, Ms. Clark was advised of several of her rights. However, she was not advised of maybe the most important one and that was her right to remain silent, her right not to incriminate herself. The court failed to advise her that she would not be required to take the witness stand and could not be compelled to testify against herself.

The White County order, which was entered December 1, 1973, states that the appellant was found to be "mentally ill". The form order does not elaborate on the nature of the illness. Regarding the competency of the appellant to enter the guilty pleas, counsel stated:

> It would be my position ... that when she was declared incompetent in 1973—that order stands until there is something done to reverse that order. Therefore, in 1975, when she entered this plea, we would argue that she was not competent to enter this plea and in fact the court did not inquire in open court as to whether she was competent or suffering from any mental illness or disease, which courts do nowadays.

The transcript of the sentencing hearing does not indicate that the appellant was suffering from a mental illness. She admitted a previous addiction to narcotics.

## LAW APPLICABLE TO PRE–*MACKEY* GUILTY PLEAS

The appellant entered the guilty pleas in question after the United States Supreme Court decided *Boykin v. Alabama*,[2] but before the Tennessee Supreme Court decid-

**2.** 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

ed *State v. Mackey,*[3] *Rounsaville v. Evatt,*[4] *State v. Gilam,*[5] and *State v. McClintock.*[6] The guilty pleas were also entered before the effective date of Rule 11, Tennessee Rules of Criminal Procedure, which governs guilty plea proceedings.[7]

■ This Court has previously held that *Mackey* is to be applied "prospectively only."[8] Today, we hold that our Supreme Court's decisions in *Rounsaville, Gilam* and *McClintock* are likewise to be applied prospectively only. The Supreme Court did not indicate that the rules of law created in these cases are to be applied retroactively. Nor did the Supreme Court hold that these decisions should be applied retroactively in *Newsome* or *Frazier.*

■ Federal law governs the standard that is to be applied in determining the validity of a plea of guilty.[9] In *North Carolina v. Alford,*[10] the United States Supreme Court said the "standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant".[11]

## PRIVILEGE AGAINST SELF–INCRIMINATION REQUIREMENT

■ The issue we must decide today is whether *Boykin* mandates that a defendant be advised of and waive the privilege against compulsory self-incrimination as a prerequisite to a constitutionally valid guilty plea.

In the seminal case of *Boykin v. Alabama,* supra, the petitioner entered pleas of guilty to five separate offenses of common law robbery, a capital offense in Alabama. A jury returned a death sentence in each case. The United States Supreme Court noted that "[s]o far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court."[12] The Court reversed the appellant's convictions, concluding that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."[13] Observing that it had previously established in *Carnley v. Cochran*[14] the "requirement that the prosecution spread on the record the prerequisites of a valid waiver", the Court said:

> We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a guilty plea is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitution-

**3.** 553 S.W.2d 337 (Tenn.1977).

**4.** 733 S.W.2d 506 (Tenn.1987). *See State v. Newsome,* 778 S.W.2d 34 (Tenn.1989), and *State v. Frazier,* 784 S.W.2d 927 (Tenn.1990), which dilute the Court's ruling in *Rounsaville.*

**5.** 732 S.W.2d 600 (Tenn.1987). *See State v. Newsome,* supra, and *State v. Frazier,* supra, which dilute the Court's ruling in *Gilam.*

**6.** 732 S.W.2d 268 (Tenn.1987).

**7.** Tenn.R.Crim.P. 59 Committee Comment. The rules became effective on July 13, 1978.

**8.** *State v. Wallace,* 604 S.W.2d 890, 892 (Tenn. Crim.App.1980).

**9.** *Marshall v. Lonberger,* 459 U.S. 422, 431, 103 S.Ct. 843, 849, 74 L.Ed.2d 646, 656 (1983); *Boy-*

*kin v. Alabama,* supra; *Dunn v. Simmons,* 877 F.2d 1275, 1277 (6th Cir.1989).

**10.** 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**11.** 400 U.S. at 31, 91 S.Ct. at 164, 27 L.Ed.2d at 168. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969); *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 478 (1962); *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927).

**12.** 395 U.S. at 239, 89 S.Ct. at 1710, 23 L.Ed.2d at 277.

**13.** 395 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279.

**14.** 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). In *Carnley* the Court addressed the

al right in a proceeding is of course governed by federal standards....

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth.... Second, is the right to trial by jury.... Third, is the right to confront one's accusers.... We cannot presume a waiver of these three important federal rights from a silent record. What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought ..., and forestalls the spinoff of collateral proceedings that seek to probe murky memories.

The three dissenting justices in the Alabama Supreme Court stated the law accurately when they concluded that there was reversible error "because the record does not disclose that the defendant vol-

untarily and understandingly entered his pleas of guilty...." [15] [footnotes and citations omitted].

*Boykin* simply requires that the transcript of a guilty plea proceeding affirmatively show that "the defendant voluntarily and understandingly entered his plea of guilty".[16] *Boykin* did not create a "procedural requirement" that the three constitutional rights mentioned in the opinion must be explained to the defendant and the defendant waive these rights before a trial judge can accept a defendant's guilty plea.[17] Moreover, the federal courts have been, and are presently, "unwilling to hold, as a constitutional requirement applicable in habeas cases to state proceedings, that a guilty plea requires any precise litany for its accomplishments".[18] In short, "[a] catechism of the constitutional rights that are waived by entry of a guilty plea is not compelled" by *Boykin* or the Constitution.[19]

The United States Circuit Courts of Appeals, including the Sixth Circuit,[20] have held that the failure of a trial judge to articulate a right mentioned in *Boykin does not*, as a matter of law, render a judgment constitutionally infirm.[21] This in-

---

waiver of the Sixth Amendment right to counsel.

**15.** 395 U.S. at 242–244, 89 S.Ct. at 1712–1713, 23 L.Ed.2d at 279–280.

**16.** 395 U.S. at 244, 89 S.Ct. at 1712–1713, 23 L.Ed.2d at 279–280.
If there is no transcript of the sentencing hearing or the transcript is inadequate to establish that the plea was voluntarily and intelligently entered, extrinsic evidence may be introduced to establish this fact. *Dunn v. Simmons*, 877 F.2d 1275, 1277 (6th Cir.1989); *Pitts v. United States*, 763 F.2d 197, 200 (6th Cir.1985); *Sizemore v. Dist. Ct. 50th Judicial Dist. Boyle County.*, 735 F.2d 204, 207 (6th Cir.1984); *Roddy v. Black*, 516 F.2d 1380, 1384 (6th Cir.) *cert denied*, 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975).

**17.** *Stinson v. Turner*, 473 F.2d 913, 915 (10th Cir.1973).

**18.** *Armstrong v. Egeler*, 563 F.2d 796, 799 (6th Cir.1977), quoted with approval in *Campbell v. Marshall*, 769 F.2d 314, 324 (6th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 576 (1986).

**19.** *Wade v. Coiner*, 468 F.2d 1059, 1061 (4th Cir.1972).

**20.** *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir.1988); *Campbell v. Marshall*, supra, 769 F.2d at 324; *Pitts v. United States*, 763 F.2d 197, 200 (6th Cir.1985); *United States v. Stead*, 746 F.2d 355, 356–357 (6th Cir.1984), *cert. denied*, 470 U.S. 1030, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985); *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir.1975), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976).

**21.** *Gonzales v. Grammer*, 848 F.2d 894 (8th Cir. 1988); *Buckley v. Butler*, 825 F.2d 895, 899–900 (5th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988); *Stacey v. Solem*, 801 F.2d 1048, 1050 (8th Cir.1986); *Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 937, 93 L.Ed.2d 987 (1987); *United States v. Freed*, 703 F.2d 394, 395 (9th Cir.1983), *cert. denied*, 464 U.S. 839, 104 S.Ct. 131, 78 L.Ed.2d 126 (1983); *Rouse v. Foster*, 672 F.2d 649, 651 (8th Cir.1982); *Barksdale v. Blackburn*, 670 F.2d 22, 25 (5th Cir.1982), *cert. denied*, 457 U.S. 1109, 102 S.Ct. 2912, 73 L.Ed.2d 1319 (1982); *George v. United States*, 633 F.2d 1299, 1301 (9th Cir.

terpretation of *Boykin* is supported by the decisions of the United States Supreme Court decided after *Boykin.*

In *Brady v. United States*,[22] which was decided approximately one year after *Boykin*, the United States Supreme Court said: "The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized.... The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily."[23] We parenthetically note that the colloquy between the trial judge and Brady did not contain an explanation of the right to trial by jury, the privilege against compulsory self-incrimination, or the right to compulsory process, yet the Supreme Court ruled that Brady's guilty plea was valid. Later, in *North Carolina v. Alford*,[24] the Court stated that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant".[25]

In summary, the failure of a trial judge to advise a defendant of his privilege against compulsory self-incrimination prior to *Mackey did not*, as a matter of law, cause a defendant's conviction to become constitutionally infirm. If the record of the sentencing hearing, as here, affirmatively shows that the defendant's "plea represent[ed] a voluntary and intelligent

choice among alternative courses of action open to the defendant", the defendant's conviction is valid. In other words, "[s]pecific judicial incantation of constitutional rights is not the litmus test under" the Constitution or *Boykin.*[26]

## COMPETENCY TO ENTER PLEAS

■ The appellant contends that she was not competent to enter the pleas of guilty in these two cases. In support of this issue the appellant submitted an order dated December 1, 1973, which states the appellant was mentally ill and she was being committed to Moccasin Bend Hospital.

As this Court said in *Berndt v. State:*[27] It is a fundamental principle of our system of criminal justice that one who is charged with a crime cannot be required to plead to the offense, be put to trial, convicted, or sentenced while insane or otherwise mentally incompetent. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *State v. Stacy*, 556 S.W.2d 552 (Tenn.Crim.App.1977); *Mackey v. State*, 537 S.W.2d 704 (Tenn.Crim.App.1975). The conviction of an accused while mentally incompetent violates the basic concepts of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Pate v. Robinson*, supra; *Drope v. Missouri*, supra. Such a conviction also violates Article I, Section 8 of the Tennessee Constitution.[28]

1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1397, 67 L.Ed.2d 368 (1981); *Brown v. Jernigan*, 622 F.2d 914, 915 (5th Cir.1980), *cert. denied*, 449 U.S. 958, 101 S.Ct. 368, 66 L.Ed.2d 224 (1980); *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974); *United States v. Gearin*, 496 F.2d 691, 696 (5th Cir.1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975); *Todd v. Lockhart*, 490 F.2d 626, 628 n. 1 (8th Cir.1974); *McChesney v. Henderson*, 482 F.2d 1101, 1110 (5th Cir.1973) *cert. denied*, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974); *Lockett v. Henderson*, 484 F.2d 62, 63–64 (5th Cir.1973) *cert. denied*, 415 U.S. 933, 94 S.Ct. 1448, 39 L.Ed.2d 492 (1974); *United States v. Sherman*, 474 F.2d 303, 305 (9th Cir.1973); *Stinson v. Turner*, 473 F.2d 913, 915–916 (10th Cir.1973); *Wade v. Coiner*, 468 F.2d 1059, 1061 (4th Cir. 1972) *cert denied*, sub. nom. *Zelker v. Robinson*, 411 U.S. 939, 93 S.Ct. 1892, 36 L.Ed.2d 401 (1973); *United States v. Frontero*, 452 F.2d 406,

411 (5th Cir.1971). *See* W. LaFave and J. Isreal, *Criminal Procedure*, § 20.4 (1985).

**22.** 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

**23.** 397 U.S. at 747 n. 4, 90 S.Ct. at 1468 n. 4, 25 L.Ed.2d at 756 n. 4.

**24.** 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**25.** 400 U.S. at 31, 91 S.Ct. at 164, 27 L.Ed.2d 168.

**26.** *United States v. Gearin*, 496 F.2d 691, 696 (5th Cir.1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975).

**27.** 733 S.W.2d 119 (Tenn.Crim.App.1987).

**28.** 733 S.W.2d at 121–122.

The fact that the appellant had been declared to be mentally ill in 1973 does not, as a matter of law, lead to the conclusion that the appellant was incompetent in 1975 when she pled guilty to the two offenses in Rutherford County. The "mental illness" referred to in the order may have resulted from the appellant's dependence on illicit narcotics. She stated at the sentencing hearing that she had previously been addicted to cocaine and "diet pills". However, when she entered the pleas of guilty, she was confined to the Department of Correction and taking college business courses at night.

The transcript of the sentencing hearing does not give any indication that the appellant was suffering from a mental impairment. Her answers to the questions asked by the trial judge and the District Attorney General were responsive as well as articulate. When the District Attorney General made an inaccurate statement concerning her circumstances, she corrected him. In short, the transcript of the sentencing hearing illustrates that the appellant was fully aware of what she was doing when she entered the pleas of guilty, and she had the requisite mental capacity to enter the pleas as well as waive her rights.[29]

Contrary to the argument advanced by the appellant, the trial judge cannot be faulted for failing to question the appellant's mental capacity to enter the pleas of guilty *sua sponte.* There is nothing contained in the transcript of the sentencing hearing which would cause a reasonable trial judge to believe that the appellant might be incompetent to stand trial or enter a plea of guilty.[30] In *Pate v. Smith,*[31] the Sixth Circuit Court of Appeals stated that the standard of review of issues contending that a trial judge should have conducted a competency hearing *sua sponte* is "[w]hether a reasonable judge, situated as was the trial judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial [or enter a plea of guilty]".[32] Moreover, an appellate court may only consider the facts which were before the trial judge prior to and during the sentencing hearing in determining this issue.[33]

In post-conviction proceedings the petitioner has the burden of proving the grounds raised in the petition by a preponderance of the evidence before the petitioner is entitled to relief from his conviction.[34] Here, the appellant made the tactical decision to predicate her request for relief on the White County order. She waived her appearance, and she did not call any other witness to support this ground. As previously stated, the White County order, standing alone, does not establish this ground. Thus, the appellant failed to establish that she was incompetent at the time she entered the guilty pleas; and, as a result, she is not entitled to relief from her convictions on this ground.

## CONCLUSION

The trial court properly denied the appellant's application for relief from her convictions.

The failure of the trial judge to explain the privilege against compulsory self-incrimination to the appellant prior to accepting the guilty pleas did not render the appellant's convictions constitutionally infirm. Moreover, the transcript of the sentencing hearing establishes that the appellant voluntarily, understandingly and knowingly entered the guilty pleas.

---

**29.** *See Berndt v. State,* supra.

**30.** *See Rodriguez v. Ricketts,* 798 F.2d 1250, 1253 (9th Cir.1986); *cert. denied,* 479 U.S. 1057, 107 S.Ct. 937, 93 L.Ed.2d 987 (1987); *Speedy v. Wyrick,* 748 F.2d 481, 487 (8th Cir.1984); *Williams v. Bordenkircher,* 696 F.2d 464, 467 (6th Cir. 1983), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 287 (1983); *Berndt v. State,* supra at 122.

**31.** 637 F.2d 1068 (6th Cir.1981).

**32.** 637 F.2d at 1072. *Pate* is cited with approval in *Berndt v. State,* supra at 122.

**33.** *Williams v. Bordenkircher,* supra at 467; *State v. Berndt,* supra at 122.

**34.** *Harvey v. State,* 749 S.W.2d 478, 480 (Tenn. Crim.App.1987); *Clenny v. State,* 576 S.W.2d 12, 14 (Tenn.Crim.App.1978), *cert. denied,* 441 U.S. 947, 99 S.Ct. 2170, 60 L.Ed.2d 1050 (1979).

The appellant failed to establish that she was mentally incompetent when she entered the pleas of guilty.

DUNCAN, P.J., and BIRCH, J., concur.