IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 20, 2002 Session

## NATASHA W. CORNETT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Greene County**
**No. 01 CR 120     James E. Beckner, Judge**

_____

**No. E2002-00034-CCA-R3-PC**
**September 30, 2002**
_____

The petitioner, Natasha W. Cornett, appeals the trial court's denial of post-conviction relief. The issues presented for our review are (1) whether the petitioner properly waived her right to a jury trial at sentencing; (2) whether her guilty pleas to three counts of first degree murder, one count of attempted first degree murder, two counts of especially aggravated kidnapping, two counts of aggravated kidnapping, and one count of theft over $1,000 were knowingly and voluntarily entered; and (3) whether the petitioner was denied the effective assistance of counsel. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Susanna L. Thomas, Newport, Tennessee, for the appellant, Natasha W. Cornett.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; and Garrett Christiansen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 6, 1997, Vidar Lillelid, his wife, Delphina, and their six-year-old daughter, Tabitha, were murdered near an interstate rest stop in Greene County. Two-year-old Peter Lillelid suffered two life-threatening gunshot wounds, one of which caused the loss of an eye. Just before their scheduled trials, the petitioner and her co-defendants, Karen Howell, Crystal Sturgill, Joseph Risner, Dean Mullins, and Jason Bryant, each entered pleas of guilt to the attempted murder of Peter Lillelid and to the first degree murders of Vidar, Delphina, and Tabitha Lillelid. The petitioner and each of the other defendants also pled guilty to two counts of especially aggravated kidnapping, two counts of kidnapping, and one count of theft of property valued at between $1,000 and $10,000. In exchange for the pleas of guilt, the state withdrew its request for the imposition of the death penalty as to the petitioner and Joseph Risner, Dean Mullins, and Crystal Sturgill. Because Howell and

Bryant were minors at the time of offenses, they did not qualify for the death penalty. At the conclusion of the sentencing hearing, the trial court imposed identical sentences upon each defendant as follows:

| Crimes | Sentence |
| --- | --- |
| Three counts of first degree murder | Life without the possibility of parole (consecutive) |
| Attempted murder | 25 years (consecutive) |
| Two counts of especially aggravated kidnapping | 25 years (concurrent) |
| Two counts of aggravated kidnapping | 12 years (concurrent) |
| Theft | Four years (concurrent) |

The petitioner and the other defendants did not appeal the sentences imposed for the theft and kidnapping convictions. In State v. Howell, 34 S.W.3d 484 (Tenn. Crim. App. 2000), this court affirmed the sentences imposed upon the petitioner for each of the three first degree murder convictions and the attempted murder. Application for permission to appeal to the supreme court was denied on September 25, 2000.

On July 19, 2001, the petitioner filed a petition for post-conviction relief. Petitioner asserted that her waiver of a jury trial did not comply with Rule 23 of the Tennessee Rules of Criminal Procedure. She generally alleged that her pleas were neither knowingly nor voluntarily entered and that she was denied the effective assistance of counsel. The petitioner specifically asserted that she was coerced into pleading guilty through misrepresentations, breached promises, and threats by the state. She complained about the "all or nothing" nature of the state's plea offer which required the consent and participation of all of her co-defendants. The petitioner contended that she was not mentally sound at the time of her pleas and was influenced to waive her constitutional rights by the side effects of a prescription medication. She also argued that she was not guilty of the crimes charged and complained that her counsel failed to adequately advise her prior to the plea of either the mental state required for the commission of the crimes or the possible sentencing consequences.

At the evidentiary hearing, it was established that attorneys Robert F. Cupp and Stacy Street were appointed to represent the petitioner. The defense team included a criminal investigator, a mitigation specialist, a criminologist, a psychiatrist, and a psychologist. Attorney Cupp described the expert assistance as the best of any of the many cases in which he had been involved. The theory of defense was to present the petitioner as a minor participant in the offenses. As mitigation proof in the event of her conviction, the defense attorneys found witnesses in the Pikeville, Kentucky, area who were able to testify on behalf of the petitioner. In the course of their investigation, the defense attorneys learned that the petitioner, when young, had been diagnosed with a bipolar disorder and

institutionalized in a psychiatric facility. Based upon the guidance of their mental health experts, Attorneys Cupp and Street determined that the petitioner's mental problems no longer existed at the time of the offense. Attorney Cupp confirmed that immediately prior to trial, the state offered a package plea proposal conditioned upon the petitioner and each of the other defendants accepting the terms. The proposal required guilty pleas upon each offense and the maximum sentences for each of the kidnapping and theft charges. The trial court was to determine the sentences for the three first degree murders and the attempted murder. If the terms were acceptable to each of the defendants, the state would agree to withdraw its request for the death penalty.

Attorney Cupp testified that he and Attorney Street spent approximately nine hours with the petitioner over a period of three days discussing the offenses and the various sentencing possibilities. He acknowledged that the petitioner did not appear to be concerned about the death penalty for herself and was primarily motivated to assist the others to avoid capital punishment. Attorney Cupp testified that during discussions immediately before the guilty plea, the petitioner's demeanor was no different than it had been previously. He stated that the petitioner never claimed to be under the influence of medication. Attorney Cupp described her decision to accept the offer as entirely voluntary.

Attorney Street corroborated the testimony of his co-counsel. He testified that he had spoken with every witness for the state and had examined all of the evidence the state intended to introduce at trial. He confirmed that the defense theory was to portray the petitioner as a minor participant, not having fired any of the shots which had either killed or injured the victims. The defense theory during the penalty phase of the trial was to establish that the petitioner had a dysfunctional family, was abused from early childhood, and was afflicted with mental deficiencies and alcoholism. Attorney Street recalled that he had visited the petitioner, who was in solitary confinement at the jail, at least two or three times a week. He was aware that the petitioner had been prescribed Haldol, an anti-psychotic drug which she later stopped taking because of its side effects. Attorney Street believed that the petitioner felt better after terminating her use of the prescription and confirmed that the petitioner did not reveal that she had taken any other medication. Further, he was unable to detect any indication of mental problems. Attorney Street acknowledged that he had advised the petitioner prior to her plea that it was his opinion that the jury would return a sentence of death. He specifically remembered the petitioner's initial response, "I don't care whether I die or not." While he described the petitioner as reluctant, Attorney Street testified that she had almost immediately agreed to the terms of the plea offer. He specifically recalled explaining to the petitioner that a "package deal" required the acceptance of all defendants, else it was available to none. It was his opinion that the petitioner had made an effective witness during the sentencing hearing and that a substantial amount of other mitigating testimony had been adequately presented through a variety of witnesses. A psychiatric report was introduced at the hearing which described the petitioner as a troubled person, exhibiting symptoms of mental illness. The report concluded, however, that she had no psychosis and was not insane at the time of the offenses. Attorney Street described the petitioner as extremely intelligent, very artistic, and articulate. He confirmed that even though the sentencing hearing was approximately one month after the guilty pleas and the testimony at the

hearing lasted a full week, the petitioner never expressed any desire to withdraw her plea during that time.

The petitioner testified that she had signed the plea agreement on the day the state extended the offer but did not feel that she had accepted the terms. She stated that she kept the documents so that she could reconsider. The petitioner acknowledged that she asked several questions about the possible sentences and the consequences in the event she rejected the offer. The petitioner recalled that she asked her attorneys to describe prison life, to express their views on the possibility of the imposition of the death penalty, and to assess the likelihood of winning an acquittal. She stated that she understood that even if she was acquitted at trial, her co-defendants could be convicted and could be sentenced to death. The petitioner recalled that the best possible scenario still required a 51-year term in prison and described her acceptance of the plea offer as a last-minute decision. She claimed that the plea discussions wreaked havoc on her mental state, causing her to be guilt-ridden and suicidal due to her failure to prevent the killings. The petitioner viewed her decision to accept the offer as being based primarily upon her desire to stop anyone else from dying. She claimed that by the time she had made her final decision to accept the state's offer, everyone had accepted except for Howell. She claimed that the week before her guilty plea, she took "a yellow capsule" for nightmares and Xanax, frequently cried, and slept erratically. The petitioner insisted that she told her attorneys that she had been taking medication and contended that they were aware of her impaired mental state. She also maintained that shortly after the imposition of sentence, she informed Attorney Street that she wanted to withdraw her plea.

At the conclusion of the evidentiary hearing, the trial court entered a memorandum opinion and order denying post-conviction relief. Initially, the trial court determined that the petitioner had waived a jury trial in written form with the approval of the court and the district attorney general. The trial court determined that Attorneys Cupp and Street were competent, had prior experience in capital cases, and had all of the resources necessary to prepare for trial. The trial court concluded that the attorneys had made an exhaustive investigation and had maintained a high level of communication with the petitioner. It characterized the facts and circumstances of the offenses as "horrible," establishing that the petitioner was a willing participant in the shootings. The trial court also determined that the pleas were knowingly and voluntarily made upon the sound advice of counsel and that they were not entered due to the influence of medication or the stress due to the state's offer of a "package deal." Finally, the trial court found that the petitioner was fully aware of the consequences of her plea and had represented at the guilty plea hearing that she had not used alcohol or drugs in the prior 24 hours.

I

The petitioner first argues that she did not waive her right to have a jury decide the sentences on the three murder convictions. She argues that Article I, sections 6 and 14, of the Tennessee Constitution and Tennessee Code Annotated section 39-13-204(a), which provides that after a verdict of guilty of first degree murder, "the jury shall fix the punishment," establish both constitutional and statutory rights to a jury. The petitioner specifically argues that the waiver she

-4-

signed prior to the sentencing hearing is invalid because the document makes no specific mention of the right to a jury or the petitioner's waiver thereof.

Rule 23 of the Tennessee Rules of Criminal Procedure provides as follows:

> In all criminal cases except small offenses, trial shall be by jury unless the defendant waives a jury trial in writing with the approval of the court and the consent of the district attorney general. The defendant may waive a jury trial at any time before the jury is sworn.

Unless there is an execution of a waiver of the right to trial by jury, a defendant in a criminal case is entitled to have a jury empaneled to try the matter. State v. Johnson, 574 S.W.2d 739, 741 (Tenn. 1978). Although no particular form is required, waivers, in order to be valid, must be "voluntarily, knowingly, and intelligently made." Patton v. United States, 281 U.S. 312 (1930); State v. Bobo, 814 S.W.2d 353, 359 (Tenn. 1991). Generally speaking, the waiver "must be clearly and convincingly shown" by the record. See generally State v. Tidwell, 775 S.W.2d 379, 386 (Tenn. Crim. App. 1989); Lee v. State, 560 S.W.2d 82, 84 (Tenn. Crim. App. 1977). "If the defendant sees fit to waive [the right to trial by jury], it is permissible provided that waiver is made in accordance with the safeguards provided by the constitution and implementing statutes or rules of criminal procedure." Bobo, 814 S.W.2d at 359. On appeal, this court is bound to accept the trial court's factual findings unless the evidence preponderates against those findings. State v. Kelly, 603 S.W.2d 726, 729 (Tenn. 1980).

In this instance, the record establishes that the petitioner and the other defendants signed a "Waiver of Rights and Plea of Guilty." As part of the written proposal made by the state, the defendant signed a document providing that "sentencing will be strictly within the sound discretion of the trial court." The document is dated February 20, 1998, and is approved by the signatures of each of her two attorneys. The petitioner signed an acceptance of the written plea offer and an acknowledgment of the specific waiver:

> Furthermore, having been advised of my constitutional rights, I freely and voluntarily waive my right to a trial by jury, my right not to be compelled to incriminate myself, my right to have a jury impose any fine in excess of $50, and all other rights explained to me. I hereby submit my case to the trial judge for decisions, both as to guilt and punishment.

After the trial court approved the guilty plea and imposed sentence, the petitioner failed to file a motion to withdraw the guilty plea and failed to present the issue on direct appeal. Tennessee Code Annotated section 40-30-206(g) provides that, with few exceptions, none of which appear to be applicable, a "ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." See also House v. State, 911 S.W.2d 705 (Tenn. 1995), cert. denied, 517 U.S. 1193, 116 S. Ct. 1685 (1996). More importantly, the transcript of the guilty plea

proceeding, the sentencing hearing, and the evidentiary hearing on the petition for post-conviction relief established that the petitioner expressly waived her right to a sentencing hearing before a jury and properly asked that the trial court undertake that responsibility.

## II

Next, the defendant argues that her pleas were neither knowingly nor voluntarily made. She argues that a "package deal" by its very nature is designed to coerce less culpable individuals to feel responsible for the lives of others and that a decision made under these circumstances cannot be voluntary.

Under the terms of the Post-Conviction Procedure Act, a petitioner bears the burden of proving her allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). The credibility of the witnesses and the weight and value afforded to their testimony are appropriately addressed in the trial court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). On appeal, the burden is on the petitioner to establish that the evidence preponderated against the findings of the trial judge. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). Otherwise, the findings of fact by the trial court are conclusive. Graves v. State, 512 S.W.2d 603, 604 (Tenn. Crim. App. 1973).

In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court ruled that defendants should be advised of certain of their constitutional rights before entering pleas of guilt. Included among those required warnings are the right against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Id. at 243. The overriding Boykin requirement is that the guilty plea must be knowingly and voluntarily made. Id. at 242. If the proof establishes that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

The holding in Boykin does not mandate a verbatim explanation of the rights at issue. Instead, it requires only that the record affirmatively show that there was a voluntary and knowing entry of the guilty pleas. The pleas must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); see Clark v. State, 800 S.W.2d 500 (Tenn. Crim. App. 1990). A plea cannot be voluntary if the accused is "'incompetent or otherwise not in control of his mental facilities.'" Blankenship, 858 S.W.2d at 904 (quoting Brown v. Perini, 718 F.2d 784, 788 (6th Cir. 1983)). The totality of the circumstances to be considered include the relative intelligence of the defendant, the degree of familiarity with criminal proceedings, whether the defendant was represented by competent counsel with the opportunity to confer about the various alternatives available, knowledge of the criminal charges lodged, and the reasons for the decision to plead guilty, including any desire to avoid a greater penalty that might result from a jury trial. Powers v. State, 942 S.W.2d 551, 556 (Tenn. 1996).

In this state, "package deals" have been approved as an acceptable means of reaching a plea agreement. In State v. Street, 768 S.W.2d 703, 711 (Tenn. Crim. App. 1988), this court recognized the legitimacy of the concept. Several cases before and since have done the same. In Parham v. State, 885 S.W.2d 375 (Tenn. Crim. App. 1994), a contingent plea offer was found not to have coerced a guilty plea. See also Netters v. State, 957 S.W.2d 844 (Tenn. Crim. App. 1997); Hodges v. State, 491 S.W.2d 624 (Tenn. Crim. App. 1972).

In this instance, the record demonstrates that the petitioner was intelligent and also familiar with criminal proceedings. She made straight A's in elementary school and until the seventh grade had been a good student, although at age 14 she was hospitalized for psychiatric care. For a period of eleven days, she continued outpatient therapy, received medication, and had improved. Psychiatrist Robert Sadoff, employed by the defense, determined that the petitioner was not insane at the time of the crimes and, while exhibiting symptoms of a bipolar disorder, was not out of touch with reality and did not suffer from psychosis. The record establishes that the petitioner had able attorneys who met with her often and discussed the various trial and sentencing alternatives. At the conclusion of the sentencing hearing, the trial judge described the petitioner as "the instigator and orchestrator of the trip and the things that led to the death of the Lillelids . . . an active part[icipant] in the kidnapping of the Lillelids at the rest area." It was the petitioner, the record indicates, who suggested that guns be obtained during the course of the trip.

Under these circumstances, the petitioner faced a significant likelihood of the death penalty. Whether the motivation was to escape her own death or assist the others in doing so, the circumstances suggest that the guilty pleas were knowingly, voluntarily, and intelligently made, a reasonable choice among the limited and potentially disastrous alternatives available. In short, the evidence does not preponderate against the trial court's conclusion that the petitioner's pleas were properly entered.

III

As her last issue, the petitioner argues that her attorneys were ineffective. She submits that rather than relying upon the written report of Dr. Sadoff, her attorneys should have presented him to the trial court as a live witness. The petitioner also complains that her trial attorneys failed to provide adequate mitigation evidence and failed to lodge objections to the improper statements of an attorney representing Crystal Sturgill, one of her co-defendants, who made references to Satanism and witchcraft. The petitioner argues that the inappropriate references to her interest in the occult resulted in her receiving a longer sentence than she otherwise merited. The petitioner also complains about her attorneys' lack of explanation regarding the significance of the waiver of certain of her constitutional rights and their relative acquiescence to a group, rather than individualized, sentencing concept.

In order for the petitioner to be granted relief on grounds of ineffective assistance of counsel, she must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for her counsel's deficient performance, the result of her trial would have been different. See Strickland v. Washington, 466

U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This two-part standard, as it applies to guilty pleas, is met when the petitioner establishes that, but for counsel's errors, she would not have pled guilty and would have insisted on a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

This court must indulge a strong presumption that the conduct of the defense attorneys at the trial falls within the range of reasonable professional assistance and must evaluate their performance from their perspective at the time of the alleged deficiencies and in light of the totality of the evidence. Strickland, 466 U.S. at 690. The petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceedings would have been different. Id. at 695.

This court has been unable to conclude from the record how the sentence might have been different had Dr. Sadoff appeared in person as a witness. The petitioner failed to produce Dr. Sadoff at the evidentiary hearing on the post-conviction petition. Typically, that is the only way to establish any prejudice by virtue of the failure to call a witness at trial. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); Holt v. State, No. M2000-01063-CCA-R3-PC (Tenn. Crim. App., at Nashville, Oct. 30, 2000).

At the sentencing hearing, the state was able to establish that by the time the petitioner had begun the sixth grade, she had practiced self-mutilation, dressed in dark clothing, painted her fingernails black, and worn dark eye and lip makeup. By 16, she was involved in theft by passing worthless checks. While denying that her wedding was "Satanic," the petitioner and her husband, who were married only 10 months, dressed in "Gothic clothing" and the bridesmaids were "chained together." There was also evidence that the petitioner claimed to be able to communicate with Karen Howell, whom she described as her "soul mate," during out-of-body experiences. There was proof that the two had cut themselves the night before the Lillelid murders and had drunk each other's blood.

Although the petitioner argues that her trial attorneys' reliance upon her youth and her lack of direct responsibility for the shootings qualified as mitigation evidence, she maintains that the establishment of a legitimate theory of defense did not relieve them of the duty to present other evidence effectively. The petitioner does not point out any particular deficiencies in their presentation, however, and this court can only guess at how counsel might have done better. It is evident that the record of the sentencing hearing contained more information on the petitioner than perhaps any of the other defendants. There was proof of a troubled childhood, the lack of a father figure, and an irresponsible mother. The near death of her grandmother when she was six was a troubling experience. The petitioner's mother had a nervous breakdown and physical problems. The petitioner experienced bouts of bulimia and depression. By age 13, the petitioner was sexually active and a year later was hospitalized for psychiatric care and was prescribed Prozac and lithium. By age 15, she abused heroin, ecstacy, cocaine, and acid. By age 17, she was married for a short period of time, and after the divorce, homeless, living on the streets of New Orleans, where she claimed to have been beaten and gang-raped. Dr. Sadoff provided helpful information, diagnosing the petitioner

as showing symptoms of a bipolar disorder and a mixed personality and dissociative disorders. While neither insane nor out of touch with reality, the petitioner was described by Dr. Sadoff as having been emotionally disturbed for several years. In summary, the record demonstrates that the attorneys for the petitioner made significant effort to fully develop the mitigating circumstances applicable. The effort was certainly in compliance with professional standards.

Further, because the proof was already in the record, it is doubtful that comments by Attorney Eichelman, who objected to references of "drinking blood" for fear that his client would be implicated, had any effect on the sentence. Certainly, the petitioner's attorneys had no control over those statements, which in the context of the other testimony presented to the trial judge during the sentencing hearing, were hardly prejudicial.

Although the petitioner argues that her attorneys did not adequately explain the significance of the waiver of her constitutional rights, the record demonstrates otherwise. Finally, the record also establishes that her defense attorneys made every effort to persuade the trial judge to impose an individualized sentence, one more lenient than those ordered for the other defendants. In that regard, there were no deficiencies in the effort.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE