## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT KNOXVILLE

### APRIL 1999 SESSION

FILED

October 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | No. 03C01-9805-CR-00176 |
| **Appellee** | * | SULLIVAN COUNTY |
| **V.** | * | Hon. Phyllis H. Miller, Judge |
| **CLAYTON EUGENE TURNER, II** | * | (Rape of a Child, Incest, Assault) |
| **Appellant.** | * | |

For Appellant

Terry C. Frye
1969 Lee Highway
Bristol, VA  24201

Robert Chad Newton
Assistant Public Defender
P.O. Box 839
Blountville, Tennessee 37617

For Appellee

John Knox Walkup
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN  37243-0493

Todd R. Kelley
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

Barry Staubus
Assistant District Attorney General
P.O. Box 526
Blountville, Tennessee 37617

Teresa Murray Smith
Assistant District Attorney General
P.O. Box 526
Blountville, Tennessee 37617

OPINION FILED:

AFFIRMED

NORMA MCGEE OGLE, JUDGE

**OPINION**

On March 11, 1998, the appellant, Clayton Eugene Turner, II, was convicted in the Sullivan County Criminal Court of rape of a child, incest, and assault. The trial court imposed a sentence of twenty-five years in the Tennessee Department of Correction for the rape of a child conviction, a sentence of six years in the Department for the incest conviction, and a sentence of six months in the Sullivan County Jail for the assault conviction. The trial court ordered the appellant to serve the twenty-five year sentence consecutively to the six year sentence and concurrently with the six month sentence, resulting in an effective sentence of thirty-one years incarceration in the Department. On appeal, the appellant presents the following issues for our review:

> 1. Whether the trial court erroneously denied the appellant's motion to suppress the State's use at trial of his confession to the police.
> 2. Whether the trial court erroneously permitted the State to amend Count I of the presentment.
> 3. Whether, with respect to the appellant's conviction of assault, the trial court erroneously denied the appellant's motion for a judgment of acquittal at the conclusion of the State's case.
> 4. Whether the trial court erroneously instructed the jury on the appellant's flight.
> 5. Whether the trial court erroneously denied the appellant's motion pursuant to Tenn. R. Evid. 412.
> 6. Whether the trial court imposed an excessive sentence.
> 7. Whether the appellant's sentence constitutes cruel and unusual punishment pursuant to the United States and Tennessee constitutions.

Following a review of the record and the parties' briefs, we affirm the judgment of the trial court.

2

# I. Factual Background

On September 25, 1996, a Sullivan County Grand Jury issued a presentment charging the appellant with one count of aggravated rape of his step-daughter, MK,[1] one count of incest with MK, and one count of aggravated sexual battery of his step-daughter, RK, the offenses occurring on July 30, 1996. On July 23, 1997, the State submitted a motion to amend Count I of the presentment to reflect a charge of rape of a child. The trial court granted the motion on July 29, 1997, immediately prior to the commencement of the appellant's trial.

At trial, the State's proof established that, on July 30, 1996, MK, who was twelve years old, and her sister, RK, who was ten years old, were visiting their mother's home. At the time of the instant offenses, their mother was married to the appellant. She and the appellant lived with their two sons in a two bedroom trailer in Bristol, Tennessee. While the girls were visiting their mother, MK slept on a couch in the living room, and RK slept with her mother and the appellant in one of the bedrooms.

In the early morning hours of July 30, RK awakened to find that she had been moved from her mother's side of the bed to the appellant's side and her underwear had been pulled down to her knees. The appellant's hand was on her "belly button." RK immediately left the bed, pulled up her underwear, and went to the bathroom. She then went into the living room and lay down beside her sister on the couch.

Soon thereafter, the appellant entered the living room and told RK to

_____

[1]Consistent with the policy of this court, we will withhold the identity of young children involved in sexual abuse cases, identifying them only by their initials.

3

return to the bedroom. RK complied and immediately fell asleep. Meanwhile, MK awakened on the couch to find the appellant lying beside her. When MK attempted to leave the couch, the appellant pulled her back down, reassuring her that "it was all right." At MK's insistence, however, the appellant agreed to allow her to go to the bathroom. After MK had been in the bathroom for some time, the appellant entered and remarked that MK was "pretty" and "a bunch of other stuff." MK successfully demanded that the appellant leave the bathroom. MK remained in the bathroom until the appellant returned to his bedroom.

Afterwards, MK returned to the couch in the living room and was attempting to go to sleep when the appellant again approached the couch. This time, the appellant tried to gag MK with a bandana. When she struggled, the appellant offered her twenty-five dollars in return for her cooperation. At MK's refusal, the appellant placed a towel over MK's mouth, ripped off her underwear, and forcibly engaged in sexual intercourse. When MK continued to struggle, the appellant threatened to kill everyone in the trailer.

Following the rape, the appellant retrieved all of his clothing from his bedroom and instructed MK to assist him in placing the clothes into garbage bags and carrying them to his car. As the appellant was leaving, he informed MK that it was her fault that he would never see his sons again.

MK recounted the rape to her mother as soon as her mother awakened. Her mother called the police, and both MK and RK were transported to the Bristol Regional Medical Center. At the Medical Center, Dr. Robert Lawson, an emergency room physician, examined both sisters. He discovered no signs that RK had been sexually assaulted. However, upon performing a pelvic examination of

MK, he discovered that the entrance to MK's vagina was bruised, the vagina was reddened, and there appeared to be semen in the vaginal area. He concluded that these findings were consistent with recent sexual intercourse. Subsequent DNA testing established that the DNA extracted from the semen matched DNA obtained from the appellant.

On the day following the appellant's offenses, Detective Lisa Christian, an investigator with the Sullivan County Sheriff's Department, located the appellant at Woodridge Hospital in Johnson City, Tennessee, a hospital devoted to the treatment of mental illness. The appellant was transported to the Sullivan County Sheriff's Department, where he provided a statement to the police. In his statement, the appellant indicated that, prior to entering Woodridge Hospital, he had experienced blackouts and was possessed by a person named "Jack," who directed his actions, including forcing him to watch pornographic movies. The appellant confessed that he had engaged in sexual intercourse with MK but denied sexually assaulting or touching RK in any way. Following his statement, the appellant was incarcerated in the jail, where he was placed on "suicide watch."

At the conclusion of the State's case, the trial court granted the appellant's motion for a judgment of acquittal as to the charge of aggravated sexual battery of RK, set forth in Count III of the presentment. However, the court determined that it would charge the jury with the lesser included offense of assault by offensive touching. The court denied the appellant's motion as to the remaining counts of the presentment. The appellant then declined to present a case, and, following a little more than one hour of deliberation, the jury found the appellant guilty of rape of a child, incest, and assault.

## II. Analysis

**A.     The Appellant's Confession**

The appellant first contends that the trial court erroneously denied his motion to suppress the State's use at trial of his confession to the police. Essentially, the appellant argues that, at the time of his confession, he was not competent to knowingly and intelligently waive his Miranda rights.

On May 23, 1997, the appellant submitted a motion to suppress his confession to investigators at the Sullivan County Sheriff's Department. The trial court conducted a suppression hearing on July 11, 1997. At the hearing, the State presented the testimony of Detective Lisa Christian, the principle investigator in the appellant's case. Consistent with her later testimony at trial, Detective Christian testified that, at the time of the appellant's arrest, on July 31, 1996, he was a psychiatric patient at Woodridge Hospital in Johnson City. Following his arrest, the appellant was transported from the hospital to the Sullivan County Jail. Before interviewing the appellant at the jail, Detective Christian advised the appellant that he was being charged with the rape of a child and also advised him of his Miranda rights. When she asked him if he understood those rights, the appellant responded affirmatively, signed an "Advise of Rights" form, and signed a written waiver of his rights. During the ensuing interview, which lasted approximately three hours, the appellant agreed to provide a statement to the police. The appellant never indicated that he wished to see an attorney or otherwise terminate the interview. Moreover, Detective Christian indicated that, at the time of the interview,

> [The appellant] appeared to be okay.
> * * *
> [H]e told me his address, his birthday, he knew all that;
> and he could sit there and talk to me. And he said that
> he was okay because I asked him that.

She further testified that the appellant appeared to be alert, responded appropriately

6

to her questions, and did not appear to be under the influence of drugs or alcohol. However, Detective Christian conceded that, in confessing to the police, the appellant did discuss an apparently imaginary person named "Jack," who had spoken to the appellant in the past and forced him to engage in aberrant behavior.

The appellant presented the testimony of his father, Clayton Turner, Sr. Mr. Turner testified that, on July 30, 1996, he received a telephone call from his son, who was at a gasoline station in East Bristol. The appellant informed his father that he was being accused of raping his step-daughter and wanted to leave town. Following the conversation, Mr. Turner and his wife met their son at the gas station. When they arrived, the appellant appeared to be disoriented and expressed a desire to commit suicide. Accordingly, his parents transported the appellant to the Medical Center in Johnson City. Mr. Turner explained that he did not take his son to a closer facility, because he had "had some bad dealings" with the hospital in Elizabethton, Tennessee. At the Medical Center in Johnson City, Mr. Turner attempted to converse with his son. However, the appellant's speech was "disjointed" and "irrational." Later on the same day, the appellant was admitted to Woodridge Hospital.

Mr. Turner visited his son at Woodridge the following morning, remaining with the appellant for approximately one and one half hours. According to Mr. Turner, the appellant's condition appeared unchanged. Moreover, Mr. Turner testified that the appellant believed that he was being pursued by someone named "Jack." Mr. Turner testified that, although he maintained a close relationship with his son, he had never heard his son mention "Jack" before that morning. Mr. Turner conceded that the appellant recognized his parents and was able to respond to their questions.

7

At the court's request, the State filed a copy of a letter from Central Appalachia Services, Inc., addressed to the trial court and dated January 24, 1997. The letter indicated that a licensed psychological examiner and a licensed clinical psychologist had evaluated the appellant and determined that he was competent to stand trial and that a defense of insanity was not a viable defense.

The court then denied the appellant's motion to suppress his confession, entering into the record the following findings:

> As far as his being irrational, and talking illogically, and out of his head, Mr. Turner's testimony was sort of contradictory. . . . [T]he day before [the defendant's arrest, Mr. Turner] . . . states that the defendant, he just couldn't understand what he said. I think you ask him if his speech was disjointed, yes, irrational, yes, illogical, yes. But he called his father, he told him where he was. He told him exactly what his problem was. He told him what he was worried about. He said he had to get out of town, and it is interesting even though the father gave reason why, he was not taking him to a psychiatric hospital at first, he took him to another county, another city to just an emergency room, instead of taking him to Bristol. . . .
>
> . . . The next day, the father states that he only talked with him that morning. He offered to get him something to eat. He said he didn't want anything to eat. He was responding to the father's questions appropriately, even though the father said, well, his speech was about the same as the previous day, irrational, illogical. . . . [A]ccording to Ms. Christian's testimony, he managed to give her this very detailed information that is at the top of the statement on page one, his full address including the lot number, the street number, his whole phone including the area code, the area code is on there, date of birth, where he works; and he signed the advice of rights. She stated that he said that he understood them. He signed the waiver of rights. She stated that he understood them. . . . And the father's testimony, of the way he was answering the father's questions, and what he knew was going on, and there was no evidence at all that he didn't know what he was saying here because what he was saying apparently was correct as far as everything that could be verified . . . . Now, he does say that somebody else, this person named Jack, it is interesting that all of these years, his father never heard about this person named Jack until after the defendant is alleged to have

8

committed this crime, and then, there is a person named Jack who makes him do, apparently, almost every bad or evil thing in his life; and he doesn't even really take responsibility, I guess, for drinking. . . . So, other than just blaming what he does on somebody else, . . . it does appear that he did make a knowing and intelligent waiver of his rights and he gave the statement freely and knowingly . . . .

A trial court's determination following a suppression hearing is presumptively correct on appeal and will only be reversed if the evidence in the record preponderates against the trial court's findings. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). Moreover, at a suppression hearing, the credibility of witnesses, the weight and value of the evidence, and the resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Accordingly, viewing the evidence in a light most favorable to the State, we conclude that the preponderance of the evidence supports the trial court's finding that the appellant voluntarily and knowingly waived his Miranda rights.

The Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Tennessee Constitution protect an accused's privilege against self-incrimation. Moreover, in Miranda v. Arizona, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630 (1966), the United States Supreme Court held that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination requires police officers, before initiating custodial interrogation, to advise the accused of his right to remain silent and his right to counsel. Assuming the use of these procedural safeguards by police interrogators and provided that the accused is acting voluntarily, knowingly, and intelligently, an accused may waive his Miranda rights. State v. Mann, 959 S.W.2d 503, 529 (Tenn. 1997), cert. denied, __ U.S. __, 118 S.Ct. 2376 (1998).

9

The appellant in this case does not allege that the police failed to comply with the procedural requirements of Miranda. However, he does allege that, at the time of his confession, "he was incapable of understanding his rights and of making a knowing waiver of his rights." The appellant also cites Clark v. State, 800 S.W.2d 500 (Tenn. Crim. App. 1990), and State v. Green, 613 S.W.2d 229 (Tenn. Crim. App. 1980), for the proposition that the trial court "should have conducted a competency hearing before ruling on the admissibility of Appellant's confession."

We first address the appellant's claim that the trial court was required to conduct a competency hearing. The appellant's citation to Green provides no guidance in resolving this issue. In Green, 613 S.W.2d at 233, this court merely noted that a confession by a mentally unsound suspect is nevertheless admissible if the accused was capable of making a narrative of past events or stating his own participation in the crime and the accused was otherwise capable of comprehending and waiving his constitutional rights. However, this court did not suggest that a trial court, in determining whether the accused was competent to waive his Miranda rights, was required to conduct a competency hearing in addition to a suppression hearing.

We similarly conclude that this court's decision in Clark does not stand for the proposition asserted by the appellant. Our decision in Clark, 800 S.W.2d at 506, addressed a trial court's obligation, pursuant to Pate v. Robinson, 383 U.S. 375, 385-386, 86 S.Ct. 836, 842 (1966), to sua sponte investigate a defendant's competence to stand trial upon receipt of evidence concerning a defendant's irrational behavior, or any prior medical opinion on the defendant's competence, or upon observing the defendant's demeanor at trial. The Pate decision was, in turn, based upon the long standing principal that subjecting a mentally incompetent

10

defendant to trial violates his right to due process of law. Drope v. Missouri, 420 U.S. 162, 171-172, 95 S.Ct. 896, 903-904 (1975). See also Moten v. State, 935 S.W.2d 416, 420-421 (Tenn. Crim. App. 1996)(the trial court's failure to order a hearing when evidence raises a sufficient doubt as to the accused's competence to stand trial deprives the accused of due process of law).

The record in this case reflects that, prior to the suppression hearing, the trial court granted the appellant's motion for a mental evaluation to ensure his competency to stand trial and to ascertain whether he was insane at the time of the instant offenses. As previously noted, a psychological examiner and a licensed clinical psychologist concluded both that the appellant was competent for purposes of the ongoing criminal proceedings and that he was sane at the time of the offenses. Moreover, the sole evidence at the suppression hearing that the appellant suffered any psychosis essentially comprised the appellant's own self-serving statements following the commission of the offenses and the somewhat contradictory observations of his father. We conclude that the trial court fulfilled its due process obligations under Pate, 383 U.S. at 385-386, 86 S.Ct. at 842. Again, we reject the implication in the appellant's brief that a trial court has any obligation, separate from and additional to its Pate obligations, to sua sponte investigate a criminal defendant's competence to confess to the police his commission of a charged offense.

Rather, a criminal defendant possesses a constitutional right to challenge the admission at trial of his confession and to have an evidentiary hearing on that issue. Jackson v. Denno, 378 U.S. 368, 376-377, 84 S.Ct. 1774, 1780-1781 (1964); McCravey v. State, 426 S.W.2d 174, 175-176 (Tenn. 1968); Smith v. State, 535 S.W.2d 162, 164-165 (Tenn. Crim. App. 1976); Mitchell v. State, 458 S.W.2d

11

630, 633 (Tenn. Crim. App. 1970). At the evidentiary hearing, the State has the burden of proving a valid waiver of Miranda rights by a preponderance of the evidence. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997). However, in order to satisfy this burden, the State need not introduce expert testimony that a defendant was competent to execute a waiver, even when a defendant introduces expert testimony to the contrary. Id. Rather, courts will look to the totality of circumstances. Id.

In Stephenson, 878 S.W.2d at 544-545, our supreme court defined a voluntary and knowing waiver of Miranda rights:

> Relinquishment of the right must be voluntary in the sense that it is the product of a free and deliberate choice rather than the product of intimidation, coercion or deception. Moreover, the waiver must be made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon. The "totality of the circumstances surrounding the interrogation" must reveal both an uncoerced choice and the required level of comprehension before a court can properly conclude that Miranda rights have been waived.

Again, the appellant contends that he did not possess the required level of comprehension.

Tennessee courts have previously addressed the effect of an accused's insanity upon both the the knowing and intelligent nature and the voluntary nature of a Miranda waiver. Generally, Tennessee courts have held that mental illness will not alone render a confession invalid. State v. Bell, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985); Green, 613 S.W.2d at 233. See also State v. Perry, No. 01C01-9710-CC-00467, 1999 WL 233522, at **13-14 (Tenn. Crim. App. at Nashville, April 22, 1999)(a deaf, but literate, defendant with paranoid schizophrenia, whose chronic use of glue may have impaired his cognitive abilities,

12

and who was administered <u>Miranda</u> warnings without the benefit of a sign language interpreter, voluntarily and knowingly waived his <u>Miranda</u> rights). Rather, the evidence must otherwise demonstrate that the accused was incapable of understanding his rights, <u>Id.</u>, or the mental illness affected "his capacity in the first place to form a will of his own and to reject the will of others." <u>State v. Benton</u>, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). <u>See also</u> <u>State v. Blackstock</u>, No. 01C01-9405-CR-00170, 1997 WL 772908, at *16 (Tenn. Crim. App. at Nashville, December 9, 1997), <u>perm. to appeal granted</u>, (Tenn. 1998).

That having been said, in <u>Colorado v. Connelly</u>, 479 U.S. 157, 169-170, 107 S.Ct. 515, 523 (1986), the United States Supreme Court diminished the relevance of an accused's mental state in assessing the voluntariness of a <u>Miranda</u> waiver. The Court held that police coercion is a prerequisite to a finding that an accused did not voluntarily waive his <u>Miranda</u> rights. <u>Id.</u> at 170, 523-524. The Court remarked, "[t]he voluntariness of a [<u>Miranda</u>] waiver . . . has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." <u>Id.</u> at 170, 523. Of course, our supreme court has observed that a defendant's right under Article I, Section 9 of the Tennessee Constitution is broader and more protective of individual rights than the test for voluntariness under the Fifth and Fourteenth Amendments to the United States Constitution. <u>State v. Crump</u>, 834 S.W.2d 265, 268 (Tenn. 1992). Nevertheless, our supreme court has not only cited <u>Connelly</u> with approval, <u>State v. Brimmer</u>, 876 S.W.2d 75, 79 (Tenn. 1994), but has appeared to expand the <u>Connelly</u> prerequisite of coercive police activity to inquiries into the knowing and intelligent nature of a waiver. <u>Bush</u>, 942 S.W.2d at 500-501. <u>See generally</u> <u>State v. Henderson</u>, No. 03C01-9804-CR-00139, 1999 WL 398087, at **11-13 (Tenn. Crim. App. at Knoxville, June 18, 1999).

In Bush, 942 S.W.2d at 500, as in this case, the defendant asserted that the trial court should have suppressed his statements to the police because he was not competent to make a knowing and intelligent waiver of his Miranda rights. In declining to afford relief, our supreme court noted that there was no proof of police overreaching, as the defendant "appeared normal [during the interrogation], was coherent and responsive to questioning, and did not discuss demons, vampires, or other delusions." Id. at 501. In other words, the relevant question was not whether the defendant was incompetent in fact but whether he displayed such incompetence that further questioning by the police constituted "overreaching." Cf. Benton, 759 S.W.2d at 431-432 (in the case of a forty-three year old defendant whose mind functioned at the intellectual level of a five-year-old, the actions by the police of merely taking the defendant into police custody and questioning him provided the "coercion" required by Connelly).

Applying this analysis, we conclude that the appellant's references to past delusions in the absence of any indications of incompetence at the time of his statement were insufficient to transform the interrogating officers' conduct into police overreaching. Moreover, even assuming that the Connelly requirement of police coercion does not apply to inquiries into the knowing and intelligent nature of a Miranda waiver, a preponderance of the record in this case supports the trial court's finding that the appellant was in fact competent to waive his Miranda rights.[2] This issue is without merit.

## B.    The State's Amendment to Count I of the Presentment

The appellant next contends that the trial court erred in permitting the

---

[2]In reviewing a trial court's determination following a suppression hearing, this court may consider evidence adduced both at trial and at the suppression hearing. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

14

State, immediately prior to the commencement of his trial, to amend Count I of the presentment to reflect a charge of rape of a child instead of aggravated rape. Article I, Section 14 of the Tennessee Constitution provides that "no person shall be put to answer any criminal charge but by presentment, indictment or impeachment." In accordance, Tenn. R. Crim. P. 7 limits the State's ability, in the absence of the defendant's agreement, to amend indictments or presentments without resubmitting the matter to the grand jury. See Tenn. R. Crim. P. 7, Advisory Commission Comments. Under Rule 7(b), a court may permit a non-consensual amendment to an indictment or presentment only if the following prerequisites are satisfied:

(1) Jeopardy has not attached.

(2) The amended indictment or presentment does not charge an additional or different offense.

(3) The amendment does not prejudice substantial rights of the defendant.

In applying Tenn. R. Crim. P. 7(b), we initially note that the record does not reflect that the appellant ever objected to the State's amendment to the presentment. Nevertheless, this court has observed that it will not presume a defendant's consent to an amendment merely from the defendant's silence. State v. Davenport, 980 S.W.2d 407, 409 (Tenn. Crim. App. 1998). Thus, we must determine whether the prerequisites set forth in Rule 7(b) have been met in this case.

Count I of the presentment in this case originally charged:

Clayton E. Turner, II on or about July 30, 1996 . . . did unlawfully, feloniously and knowingly sexually penetrate [MK], a person less than thirteen years of age, in violation of T.C.A. 39-13-502 . . . .

Tenn. Code. Ann. § 39-13-502 (1997) sets forth the offense of aggravated rape.

15

Before 1992, this statute included a subdivision enhancing the punishment for rape in cases involving a child less than thirteen years of age. See Tenn. Code. Ann. § 39-13-502, Sentencing Commission Comments. In 1992, the offense of rape of a child less than thirteen years of age was moved from Tenn. Code. Ann. § 39-13-502 to Tenn. Code. Ann. § 39-13-522 (1996), the current rape of a child statute. Therefore, at the time of the appellant's offense, Tenn. Code. Ann. § 39-13-502 did not contain the offense charged in the presentment. Realizing their mistake, the prosecutors in this case submitted a motion approximately five days before trial to amend the presentment to reflect the correct statutory citation. The trial court granted the State's motion on the scheduled trial date.

The appellant concedes, and the record does not reflect otherwise, that the trial court approved the amendment before jeopardy attached. See State v. Pennington, 952 S.W.2d 420, 422 (Tenn. 1997)(in jury proceedings, jeopardy customarily attaches when the jury is sworn). However, the appellant asserts that the offense of rape of a child, as opposed to the offense of aggravated rape, involves "different and additional elements" and that defenses available to a charge of aggravated rape are not available to the charge of rape of a child.

While it is true that the current offense of aggravated rape and the current offense of rape of a child involve "different and additional" elements and possibly different defenses, we have already noted that the factual allegations in the presentment at issue did not charge the appellant with aggravated rape. In other words, the factual allegations encompassed none of the aggravating circumstances set forth in Tenn. Code. Ann. § 39-13-502. Rather, the factual allegations charged the appellant with rape of a child as set forth in Tenn. Code. Ann. § 39-13-522. Thus, notwithstanding the appellant's argument, a cursory examination of the

16

statute originally cited in the presentment would have alerted the appellant of the State's error. Moreover, as we have also already noted, the Sentencing Commission Comments to the aggravated rape statute would have referred the appellant to the appropriate code section. In short, the challenged amendment to the presentment did not change the offense charged, the amendment only corrected an erroneous statutory citation of which the appellant was surely aware.

In State v. Beal, 614 S.W.2d 77, 80 (Tenn. Crim. App. 1981), this court held that, because the indictment in that case clearly charged the essential elements of the offense and the parties were aware of the offense charged, the trial court did not err in permitting the State to amend the indictment to correct an erroneous statutory citation. This conclusion was consistent with our general observation in State v. Bowers, 673 S.W.2d 887, 888 (Tenn. Crim. App. 1984), that, "[w]hen the words of the charging instrument show the offense for which a person is charged, the erroneous recitation of a statute is mere surplusage and not fatal to the charging instrument." See also State v. Seagraves, 837 S.W.2d 615, 617 n.2 (Tenn. Crim. App. 1992); State v. Morris, No. 01C01-9506-CC-00206, 1996 WL 233989, at **3-4 (Tenn. Crim. App. at Nashville, May 6, 1996). Accordingly, the amended presentment neither charged a different offense nor prejudiced substantial rights of the appellant. This issue is without merit.

## C.      Motion for Judgment of Acquittal

The appellant additionally contends that, with respect to his conviction of assault of RK, the trial court erroneously denied his motion for a judgment of acquittal at the conclusion of the State's case. A trial court must grant a motion for a judgment of acquittal if the evidence is insufficient to sustain a conviction of the charged offense. Tenn. R. Crim. P. 29. In making this determination, the trial court

17

may not address the weight of the evidence, but must afford the State the strongest legitimate view of the evidence, including all reasonable inferences which may be drawn from the evidence. State v. Blanton, 926 S.W.2d 953, 957-958 (Tenn. Crim. App. 1996). An appellate court applies the same standard as the trial court when resolving issues predicated upon the grant or denial of a motion for judgment of acquittal. State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995).

As previously noted, the trial court *did* grant the appellant's motion for a judgment of acquittal as to the offense of aggravated sexual battery, charged in Count III of the presentment. However, the court concluded that the evidence was sufficient to support a charge of the lesser included offense of assault. State v. Trusty, 919 S.W.2d 305, 310-311 (Tenn. 1996)(a constitutionally adequate indictment for one offense will additionally provide notice of all lesser grade and lesser included offenses).[3] Accordingly, the trial court charged the jury pursuant to Tenn. Code. Ann. § 39-13-101(a)(3) (1997), which provides:

> A person commits assault who: . . . Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

At trial, the State's proof established that the appellant had been watching pornographic movies and experiencing deviant sexual impulses prior to the

---

[3]In State v. Howard, 926 S.W.2d 579, 586 (Tenn. Crim. App. 1996), overruled on other grounds, State v. Williams, 977 S.W.2d 101 (Tenn. 1998), this court held that the offense of assault set forth in Tenn. Code. Ann. § 39-13-101(a)(3) is a lesser included offense of aggravated sexual battery as set forth in Tenn. Code. Ann. § 39-13-504(a)(4) (1997). However, we acknowledge that there is an ongoing discussion in this court concerning whether our supreme court's decision in State v. Cleveland, 959 S.W.2d 548, 554 n. 5 (Tenn. 1997), conclusively determined that assault is not a lesser included offense of sexual battery. See State v. Swindle, No. 01C01-9805-CR-00202, 1999 WL 254408, at **1-4 (Tenn. Crim. App. at Nashville, April 30, 1999); State v. Davis, No. 02C01-9712-CC-00480, 1999 WL 147951, at *5 (Tenn. Crim. App. at Jackson, March 19, 1999). We initially note that a determination of lesser included offenses depends upon the language by which the greater offense is charged in the indictment in any given case and can only, therefore, be made on a case by case basis. State v. Trusty, 919 S.W.2d 305, 312 (Tenn. 1996). Moreover, we do not believe that the supreme court's decision in Cleveland in any way contradicts this principle. Therefore, for purposes of this case, we conclude that assault is a lesser included offense of aggravated sexual battery.

18

offenses. On the morning of the offenses, RK was sleeping in a bed with her mother and the appellant. When she awakened, she discovered that she had been moved from her mother's side of the bed to the appellant's, her underwear had been pulled down to her knees, and the appellant was touching her stomach. Soon thereafter, the appellant went into the living room and raped RK's sister. We agree with the trial court that the evidence was sufficient to sustain a finding by the jury that the appellant assaulted RK within the meaning of Tenn. Code. Ann. § 39-13-101(a)(3).

**D.    Jury Instruction on the Appellant's Flight**

In his next issue, the appellant asserts that the trial court erred when it instructed the jury on flight. The trial court provided the following instruction to the jury in accordance with Tennessee Pattern Instruction Crim. No. 42.18:

> The flight of a person accused of a crime is a circumstance which, when considered with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.

> The law makes no precise distinction as to the manner or the method of flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.

> If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused be a consciousness of guilt, you may consider the fact of flight, if the flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight, and such flight may be explained by proof offered, or by the facts and circumstances of the case.

19

> Whether there was flight by the defendant, the reasons
> for it, and the weight to be given to it, are questions for
> you to determine.

This pattern jury instruction is a correct statement of the applicable law and has been previously cited with approval by our court. See, e.g., State v. Kendricks, 947 S.W.2d 875, 885-886 (Tenn. Crim. App. 1996); State v. Sneed, No. 03C01-9702-CR-00076, 1998 WL 783330, at **7-8 (Tenn. Crim. App. at Knoxville, November 5, 1998), perm. to appeal denied, (Tenn. 1999). Moreover, contrary to the appellant's assertions, there is evidence in the record to justify this instruction.

MK testified at trial that, after raping her, the appellant gathered all of his clothes, and forced her to assist him in placing the clothes into garbage bags and carrying them to his car. Before driving away from the scene of the rape, the appellant indicated to MK that he would never see his sons again. The police located the appellant the following day in a psychiatric hospital located in another county. On the basis of this evidence, we find no error in the submission of a flight instruction to the jury. Moreover, even if an instruction on flight should not have been given, the State presented overwhelming evidence of the appellant's guilt. Any error was harmless. See, e.g., State v. Smith, 893 S.W.2d 908, 918 (Tenn. 1994).

### E. Tenn. R. Evid. 412

The appellant also argues that, under Tenn. R. Evid. 412, the trial court erroneously prohibited him from introducing at trial and at the sentencing hearing evidence concerning past sexual behavior of the victim, MK. We initially note that the record is devoid of any indication that the appellant submitted either a written or oral motion prior to or during his trial for the purpose of introducing evidence of MK's past sexual behavior. Accordingly, this issue has been waived.

Tenn. R. App. P. 36(a). <u>See also</u> Tenn. R. Evid. 412(d)(1) (the accused must file a written motion to offer such evidence). <u>Cf.</u> <u>State v. Howell</u>, 868 S.W.2d 238, 254 (Tenn. 1993).

The appellant did submit a written motion following his trial, on January 15, 1998, asking that the trial court allow the appellant to introduce evidence at the sentencing hearing that MK had engaged in sexual intercourse with another individual one week prior to the appellant's offenses. The appellant argued that, under Tenn. R. Evid. 412(c)(3), the evidence was relevant to the issue of whether the victim consented to sexual intercourse with the appellant, thereby reducing his culpability for the offense.

However, it is not entirely clear that Tenn. R. Evid. 412 is applicable in the context of a sentencing hearing.[4] Generally, Tenn. R. Evid. 412 governs the admission in sexual offense cases of evidence concerning the victim's past sexual behavior. <u>See</u> <u>State v. Brooks</u>, No. 02C01-9804-CC-00116, 1998 WL 775649, at *4 n. 4 (Tenn. Crim. App. at Jackson, November 6, 1998), <u>perm. to appeal denied</u>, (Tenn. 1999)(this court concluded that Rule 412 is applicable in cases involving the rape of a child). Moreover, with limited exceptions, the Tennessee Rules of Evidence apply at sentencing hearings. Tenn. Code. Ann. § 40-35-209(b) (1997). <u>See also</u> <u>State v. Mounger</u>, No. 03C01-9802-CR-00081, 1999 WL 93172, at *5 (Tenn. Crim. App. at Knoxville, February 25, 1999). Yet, by its own terms, Tenn. R. Evid. 412 only applies to "a criminal trial, preliminary hearing, deposition, or other

_____

[4]Even if Tenn. R. Evid. 412 is applicable in the context of a sentencing hearing, Rule 412(c)(3) only permits, for the purpose of proving consent, the admission of proof that a victim has previously engaged in sexual behavior with the *defendant*. <u>See</u> Cohen, Sheppeard, and Paine, <u>Tennessee Law of Evidence</u> (1995) § 412.4, p. 245. In his brief on appeal, the appellant also argues that the evidence would have been admissible pursuant to Tenn. R. Evid. 412(c)(4). Under Rule 412(c)(4)(iii), a defendant may submit proof of the victim's sexual behavior with *others* in order to establish consent. However, this provision only applies to proof of a distinctive pattern of behavior by the victim, not to proof of isolated instances. <u>Id.</u> at 246.

proceeding in which a person is *accused* [of a sexual offense]." (Emphasis added). None of these categories appear to encompass a sentencing hearing.[5] Accordingly, the admission of evidence that the victim engaged in sexual activity one week before the instant offenses was likely governed by Tenn. R. Evid. 404(b).

In any event, we doubt both the relevance of the proffered evidence to the issue of consent and the mitigating weight of any proof of the victim's consent in the context of determining the appropriate sentence in this case for the offenses of rape of a child and incest.[6] More importantly, however, the only reference to the disputed testimony at the sentencing hearing arguably arose when the *State* asked that the trial court admit evidence of a prior criminal adjudication against another minor for the aggravated sexual battery of the victim, MK, and evidence of the appellant's knowledge of the prior incident at the time of his offenses. The State argued that the evidence was relevant to establish MK's vulnerability pursuant to Tenn. Code. Ann. § 40-35-114(4) (1996). Defense counsel responded that, *if the trial court admitted the evidence for the purpose asserted by the State*, the trial court should also consider the relevance of the evidence to the issue of MK's consent to the instant offenses. The trial court then suggested that the evidence was not relevant to MK's consent to the appellant's conduct because the prior incident may

---

[5]We note that the State at a sentencing hearing is no longer "accusing" the defendant of the commission of an offense. Rather, the defendant's guilt has been established, whether by a plea of guilt or by the verdict of the jury or the court.

[6]Consent is not a defense to either rape of a child or incest. State v. Jones, 889 S.W.2d 225, 227 (Tenn. Crim. App. 1994)(consent is not a defense to aggravated rape when the factor elevating the crime to aggravated rape is the age of the victim); State v. Holder, No. 01C01-9501-CC-00015, 1996 WL 125905, at *3 (Tenn. Crim. App. at Nashville, March 22, 1996)(the holding in Jones is applicable in prosecutions for rape of a child); State v. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985)(consent is not an issue in an incest case). Cf. State v. Lawson, No. 01C01-9607-CR-00320, 1997 WL 661483, at *4 (Tenn. Crim. App. at Nashville, October 24, 1997), perm. to appeal denied, (Tenn. 1998)(if the victim of incest knowingly, voluntarily, and with common intent consented to the conduct of the accused, he or she is an accomplice and the State must corroborate his or her testimony). Tenn. Code. Ann. § 40-35-113(3) (1997) does provide that mitigating factors include substantial grounds tending to excuse or justify the appellant's behavior, though failing to establish a defense. However, under the facts of this case, we do not believe that the twelve-year-old victim's consent would tend to excuse or justify the twenty-eight-year-old appellant's sexual advances.

not have been consensual. Interestingly, the State asserted in turn that the issue of whether MK had consented to the prior incident had been resolved at a Rule 412 hearing. Yet, there is no evidence in the record that the trial court conducted a Rule 412 hearing, and the trial court expressed some doubt that the issue of MK's consent to the prior sexual activity had ever been resolved. The exchange concluded with the State withdrawing its request. Defense counsel proffered no objection to the exclusion of the evidence from the sentencing hearing nor did defense counsel ever draw the court's attention to his previously filed Rule 412 motion.

Even assuming that, as suggested by the prosecutor's comments, the trial court had already conducted a Rule 412 hearing on the appellant's motion and denied the motion, that proceeding is not included in the record. Accordingly, this court is precluded from considering this issue. State v. Griffis, 964 S.W.2d 577, 592-593 (Tenn. Crim. App. 1997). On the other hand, if the trial court did not conduct a Rule 412 hearing, we still decline to find any error. This court has previously observed that "[t]he filing of a motion with the clerk without presenting it to the trial court for determination is of no effect. A trial judge will not be placed in error for failing to consider something that was never presented to him." State v. Kinner, 701 S.W.2d 224, 227 (Tenn. Crim. App. 1985). Although this court has generally applied this rule in the context of pre-trial motions, we believe the principle to be equally applicable in this instance. This issue is without merit.

## F. Excessive Sentence

The appellant further challenges the trial court's imposition of the maximum sentences for his offenses and the aggregate length of his sentences. The trial court conducted the appellant's sentencing hearing on March 6, 1998. At

23

the sentencing hearing, the State presented the testimony of two counselors employed by the Children's Advocacy Center in Blountville, Tennessee. The counselors testified that, since the appellant's offenses, both victims have suffered from anxiety and depression. Additionally, MK has threatened to commit suicide and has been diagnosed with post traumatic stress disorder.

The State additionally relied upon the pre-sentence report, which reflects that, on July 9, 1996, less than one month before the instant offenses, the appellant was convicted of assault in the General Sessions Court in Bristol and sentenced by the court to eleven months and twenty-nine days in the local jail. Accordingly, the appellant was on probation at the time of the instant offenses. The appellant was also convicted in 1988 and 1995 of driving under the influence of an intoxicant. Additionally, during an interview with Counseling and Consultations Services, Inc., a private, non-profit corporation which provides treatment for sexual offenders, the appellant admitted previously shoplifting and abusing drugs.

The pre-sentence report further reflects that the appellant completed the tenth grade in high school and subsequently obtained his "GED." Moreover, the appellant was employed fairly consistently as a manual laborer from 1989 until 1997.

The clinical director of Counseling and Consultation Services, Inc., Dr. J. Michael Adler, and a counselor, Teresa Fletcher, evaluated the appellant's amenability to rehabilitation and submitted to the trial court a "Risk Assessment." The examiners noted in their report that during the assessment the appellant demonstrated "deviant sexual arousal patterns," responding to grammar school females and pre-school and grammar school males. Nevertheless, the appellant

24

denied any problem and also denied his guilt of the instant offenses. The examiners further recorded:

> Mr. Turner also scored low in his ability to recognize how his sexual offending has been hurtful not only to his victims and their families but his own family as well. Mr. Turner was quite self-focused and self-centered. He blamed his victims for his incarceration and was degrading of them.

Accordingly, the examiners indicated that the appellant "is considered to be a high risk to re-offend" and is "an extremely poor candidate for treatment." However, they also noted that the appellant did not appear to suffer any "significant pathology" and possessed the intellectual ability, if not the will, to undergo a "Cognitive Behavioral Treatment Program."

The appellant in turn presented the testimony of his sister, Brenda Garretson. She testified that, during the appellant's childhood, their father was sporadically employed as a manual laborer, providing very little financial security to his family. Their father was also an alcoholic who physically abused their mother. Due to his family's instability, the appellant possessed low self-esteem and began drinking when he was fourteen or fifteen, becoming an alcoholic by the age of eighteen. Ms. Garretson also observed that, in addition to his alcoholism, the appellant had suffered from depression in the past. Nevertheless, Ms. Garretson asserted that she has never known her brother to sexually abuse anyone. She further testified that the appellant is a good father to his two sons and that both sons have suffered from depression since their father's incarceration. Ms. Garretson concluded that her brother has been reading the Bible and praying during his incarceration, is not a danger to the community, and is amenable to rehabilitation.

The appellant's mother and his wife additionally testified that the appellant has become more religious during his incarceration and is amenable to

25

rehabilitation. His wife, who is also the victims' mother, also testified that the appellant is a good father to his two sons. She asserted that one of their sons has been hospitalized twice for depression since the appellant's incarceration.

Following presentation of the proof, the trial court found the following aggravating factors in determining the appellant's sentence for both rape of a child and incest: (1) the appellant has a previous history of criminal convictions or criminal behavior; (5) the appellant treated the victim with exceptional cruelty; (7) the appellant committed the offense to gratify his desire for pleasure or excitement; (8) the appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (15) the appellant abused a position of private trust; (16) the crime was committed under circumstances under which the potential for bodily injury to the victim was great. Tenn. Code. Ann. § 40-35-114. With respect to the appellant's conviction of assault, the trial court similarly found aggravating circumstances (1), (8), and (15), and also found that the victim of the offense, RK, was particularly vulnerable. Tenn. Code. Ann. § 40-35-114(4). The trial court concluded that she was according the enhancement factors applicable to all of the offenses "the greatest amount of weight." She further noted, "If there were any mitigating factors . . . , none of them are sufficient to reduce [the appellant's] sentence[s] in any way."

In accordance with her findings, the trial court first sentenced the appellant as a Range I offender to twenty-five years incarceration in the Department for the offense of rape of a child. Rape of a child is a class A felony. Tenn. Code. Ann. § 39-13-522(b). Thus, as a Range I offender, the appellant was subject to incarceration for not less than fifteen nor more than twenty-five years. Tenn. Code. Ann. § 40-35-112(a)(1) (1997). The appellant is required to serve the entire

sentence imposed by the trial court. Tenn. Code. Ann. § 39-13-523(b) (1997). For the offense of incest, the trial court imposed a sentence of six years incarceration in the Department. Incest is a class C felony, Tenn. Code. Ann. § 39-15-302(b) (1997), and the appellant was therefore subject to not less than three nor more than six years incarceration. Tenn. Code. Ann. § 40-35-112(a)(3). The appellant is eligible for release after serving thirty percent (30%) of his sentence. Tenn. Code. Ann. § 40-35-501(c) (1997). Finally, the trial court imposed a sentence of six months incarceration in the Sullivan County Jail for the offense of assault. Assault is a class B felony. Tenn. Code. Ann. § 39-13-101(b). Accordingly, the appellant was subject to a period of incarceration not greater than six months. Tenn. Code. Ann. § 40-35-111(e)(2).[7]

The appellant contends on appeal that, in sentencing the appellant to the maximum sentences for his offenses, the trial court failed to consider the following mitigating factors: (6) the appellant, because of his youth, lacked substantial judgment in committing the offenses; (8) the appellant was suffering from a mental condition that significantly reduced his culpability for the offenses; and (13) the appellant's successful completion of his GED, his consistent record of employment, and his lack of prior felony convictions. Tenn. Code. Ann. § 40-35-113.

Appellate review of the length, range, or manner of service of a sentence is de novo. Tenn. Code. Ann. § 40-35-401(d) (1997). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the

---

[7]We note that, because the judgment of conviction in the assault case does not express a release eligibility percentage, the percentage is zero percent (0%). Tenn. Code. Ann. § 40-35-302(d)(1997).

principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code. Ann. § 40-35-102, -103, -210 (1997). See also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is upon the appellant to demonstrate the impropriety of his sentences. Tenn. Code. Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. At (d); Ashby, 823 S.W.2d at 169.

The record reflects that the trial court complied with Tenn. Code. Ann. § § 40-35-210 and 40-35-302 (1996) in determining the length of the appellant's sentences, and the court thoroughly considered sentencing principles and all relevant facts and circumstances. Although the appellant challenges the trial court's assessment of mitigating evidence, correctly applying enhancement and mitigating factors is not a prerequisite to the presumption of correctness. State v. Ware, No. 02C01-9508-CR-00228, 1997 WL 30346, at *6 n. 2 (Tenn. Crim. App. at Jackson, January 28, 1997). Therefore, we begin our de novo review presuming that the trial court imposed appropriate punishment.

We initially conclude that the trial court properly declined to afford any significant weight to the mitigating factors asserted by the appellant. See generally State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997)(the weight assigned to enhancement and mitigating factors is generally left to the trial court's discretion). First, although this court has condoned the lack of a prior criminal record as a

28

mitigating factor in appropriate circumstances, see, e.g., State v. Hicks, 868 S.W.2d 729, 731 n. 5 (Tenn. Crim. App. 1993), this court has also observed that every citizen is expected to refrain from committing any type of crime. State v. Curry, No. 02C01-9711-CR-00452, 1998 WL 376353, at *5 (Tenn. Crim. App. at Jackson), perm. to appeal denied, (Tenn. 1998). Similarly, every citizen is expected to have a stable work history if the economy permits the citizen to work, the citizen is not disabled, or the citizen is not independently wealthy. Id. Moreover, in the context of this case, the appellant's successful completion of his GED in no way mitigated the appellant's rape and assault of his step-daughters.

Second, in determining whether the appellant lacked substantial judgment in committing the instant offenses pursuant to Tenn. Code. Ann. § 40-35-113 (6), the sentencing court was required to consider the appellant's age, education, maturity, experience, mental capacity or development, and other pertinent circumstances which tend to demonstrate the appellant's ability or inability to appreciate the nature of his conduct. State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). In this case, the appellant was twenty-eight years old at the time of his offenses. As previously noted, although the appellant had not completed high school, he had successfully obtained a GED. Moreover, examiners at Counseling and Consultation Services, Inc., reported that the appellant was not suffering from any significant pathology and was intellectually capable of completing a treatment program. Furthermore, while raping MK, the appellant demonstrated his appreciation for the nature of his conduct by threatening to kill everyone in the trailer if MK awakened the other occupants and also by informing MK, following the offenses, that he would never see his sons again. In short, the record is devoid of credible evidence that the appellant lacked substantial judgment in the commission of these offenses. We also agree with the trial court that the appellant's self-serving

statements are patently insufficient to establish that he was suffering from any mental condition sufficient to reduce his culpability for the instant offenses. Tenn. Code. Ann. § 40-35-113 (8). Finally, our de novo review of the record has uncovered no other mitigating factors of significant weight.

Although not challenged by the appellant, this court must also review the trial court's application of enhancement factors. We conclude that the trial court properly applied enhancement factors (1), (5), (7), (15), and (16) in sentencing the appellant for rape of a child and incest. Tenn. Code. Ann. § 40-35-114.

First, the record does reflect the appellant's previous history of criminal convictions or behavior, albeit his record does not include felony convictions. Tenn. Code. Ann. § 40-35-114(1).

Second, although a close question, we conclude that, under the facts of this case, the appellant treated MK with exceptional cruelty. Tenn. Code. Ann. § 40-35-114(5). In order to justify application of this enhancement factor, the facts of the case must "'demonstrate a culpability distinct from and appreciably greater than that incident to' the crime . . . ." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997). This court has previously observed that this enhancement factor is generally applied in cases involving abuse or torture. State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995). However, evidence of "mental cruelty" will support a finding of exceptional cruelty. State v. Herron, No. 02C01-9407-CR-00144, 1995 WL 120230, at *4 (Tenn. Crim. App. at Jackson, March 22, 1995). In committing the offenses of rape of a child and incest, the appellant tried to gag the victim with a bandana, then offered the her twenty-five dollars to engage in sexual intercourse with him. When MK refused, the appellant covered her mouth with a towel, ripped off her underwear

and raped her, holding her down on the couch while she struggled. The appellant informed MK that, if she screamed, he would kill everyone in the house. Finally, he attempted to place responsibility for his actions on MK. In summation, the appellant's degrading offer of money in return for MK's cooperation, his use of force in raping MK, and his verbal threat to MK and her family were neither essential elements of nor inherent in the charged offenses and demonstrated the requisite, additional culpability.

Third, the record clearly supports the trial court's conclusion that the appellant committed the rape and incest in order to gratify his desire for pleasure or excitement. Tenn. Code. Ann. § 40-35-114(7). The appellant stated to the police that he had been watching pornographic movies for several weeks prior to the offense, that he rubbed MK's bottom immediately prior to the offense, that he attempted to kiss MK during his commission of the offense, that he rubbed her leg during the offense, and that she "was wet between her legs when I felt of her in her private area . . . [and] moaned while I was inside of her." MK also testified that, prior to the offense, the appellant told her that she was "pretty" and "a bunch of other stuff."

Fourth, as MK's step-father, the appellant clearly abused a position of private trust.[8] Tenn. Code. Ann. § 40-35-114(15).

Fifth, we agree that the crimes were committed under circumstances in which the potential for bodily injury to the victim was great. Tenn. Code. Ann. § 40-35-114(16). The appellant held MK down while she struggled, and he covered her

---

[8]With respect to the application of this factor to the appellant's sentence for incest, this court has previously held that enhancement factor (15) is neither inherent in nor an essential element of incest. See State v. Miller, No. 03C01-9502-CR-00037, 1997 WL 593811, at *3 (Tenn. Crim. App. at Knoxville, September 25, 1997), perm. to appeal denied, (Tenn. 1998).

31

mouth with a towel.  The appellant also threatened to kill everyone in the house if MK did not cooperate, including the victim.  See, e.g., State v. Patton, No. 01C01-9606-CR-00241, 1997 WL 742514, at *6 (Tenn. Crim. App. at Nashville, November 25, 1997), perm. to appeal denied, (Tenn. 1998).

Although not required to make specific findings of fact on the record in sentencing the appellant for misdemeanor assault, State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998), the trial court found and applied enhancement factors (1), (4), (8), and (15) to the appellant's sentence for assault.  Tenn. Code. Ann. § 40-35-114.  For the reasons stated above, the record supports the application of enhancement factors (1) and (15).  Tenn. Code. Ann. § 40-35-114.  Moreover, we conclude that the trial court properly applied Tenn. Code. Ann. § 40-35-114(4), concerning the victim's vulnerability.  A victim is particularly vulnerable within the meaning of this statutory provision when, due to her natural physical or mental limitations, the victim lacks the ability to resist the commission of the crime, the victim's ability to summon assistance is impaired, or the victim does not possess the capacity to testify against the perpetrator of the crime.  Poole, 945 S.W.2d at 96-97; State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993).  The victim's physical or mental limitation may be temporary and self-induced.  See, e.g., State v. Robinson, 971 S.W.2d 30, 46 (Tenn. Crim. App. 1997)(the victim was particularly vulnerable due to his degree of intoxication).  Moreover, in State v. Snyder, No. 03C01-9403-CR-00101, 1995 WL 687581, at *8 (Tenn. Crim. App. at Knoxville, November 21, 1995), we noted that a sleeping, seven-year-old was particularly vulnerable to the offense of arson.  Similarly, in this case, a sleeping ten-year-old was particularly vulnerable to the appellant's assault. The record justifies the application of enhancement factor (4).

With respect to all of the appellant's offenses, we note that the trial court improperly applied enhancement factor (8), concerning the appellant's previous history of unwillingness to comply with the conditions of a sentence involving release in the community. Tenn. Code. Ann. § 40-35-114. The record does not reflect any such previous history other than the appellant's commission of the present offenses while on probation. We have held that application of factor (8) under these circumstances is inappropriate. State v. Hayes, 899 S.W.2d 175, 185-186 (Tenn. Crim. App. 1995); State v. Davis, No. 03C01-9712-CR-00543, 1999 WL 135054, at *10 (Tenn. Crim. App. at Knoxville, March 15, 1999). Nevertheless, the remaining enhancement factors and general principles of sentencing, including the appellant's amenability to rehabilitation, amply support the sentences imposed.

Moreover, we conclude that the trial court correctly imposed consecutive sentencing. The appellant does not contest on appeal the application of Tenn. Code. Ann. § 40-35-115(b)(5) (1997)(the appellant's conviction of two or more statutory offenses involving sexual abuse of a minor) and Tenn. Code. Ann. § 40-35-115(b)(6)(the appellant committed the instant offenses while on probation). However, we do acknowledge this court's previous observation that, in enacting section (b)(5), the legislature intended that this section should generally be reserved for cases involving ongoing sexual abuse. State v. Ware, No. 03C01-9705-CR-00164, 1999 WL 233592, at *20 (Tenn. Crim. App. at Knoxville, April 20, 1999). Nevertheless, the appellant was indisputably on probation when he committed these offenses. Tenn. Code. Ann. § 40-35-115(b)(6). When a defendant falls within one of the statutory classifications of eligibility for consecutive sentencing, the only remaining considerations are whether (1) the sentences are necessary in order to protect the public from further misconduct by the defendant and whether (2) "the terms are reasonably related to the severity of the offenses." State v. Wilkerson,

905 S.W.2d 933, 938 (Tenn. 1995). But see State v. Kelly, No. 01C01-9610-CC-0048, 1998 WL 712268, at *14 (Tenn. Crim. App. at Nashville, October 13, 1998)(it is unsettled whether Wilkerson applies to all seven of the statutory categories for consecutive sentencing or only the "dangerous offender" category). The appellant's aggregate sentence of thirty-one years is consistent with these principles. We affirm the trial court's sentencing determinations.

### G.    Cruel and Unusual Punishment

The appellant's final complaint is that the effective length of his sentence, thirty-one years incarceration in the Department of Correction, constitutes cruel and unusual punishment, violating the Eighth Amendment to the United States Constitution and Article I, Section 16 of the Tennessee Constitution. He asserts that the sentence is particularly cruel and unusual as a person convicted of raping a child must "serve the entire sentence imposed by the court undiminished by any sentence reduction credits such person may be eligible for or earn." Tenn. Code. Ann. § 39-13-523(b). Moreover, a child rapist is eligible for neither parole nor an executive pardon. Id. at (c), (d). We conclude that the appellant's aggregate sentence of thirty-one years incarceration for rape of a child, incest, and assault is consistent with both federal and state constitutional mandates.

"The protection against cruel and unusual punishments afforded by the Eight Amendment [to the United States Constitution] has defied precise delineation." Joseph G. Cook, Constitutional Rights of the Accused § 26:1, at 26-5 (3d ed. 1996). In particular, the United States Supreme Court case of Harmelin v. Michegan, 501 U.S. 997, 111 S.Ct. 2703 (1991), reflects disagreement within the United States Supreme Court concerning the extent to which the Eighth Amendment guarantees "proportionality" in noncapital cases. See also State v. Harris, 844 S.W.2d 601, 602

(Tenn. 1992)(the precise contours of the federal proportionality guarantee are unclear). Nevertheless, in State v. Black, 815 S.W.2d 166, 189 (Tenn. 1991), a capital case, the Tennessee Supreme Court articulated the exact standards to be used in determining whether a legislatively approved punishment is cruel and unusual under the Tennessee Constitution, noting that the adopted standards generally comport with federal constitutional standards. The court held that a reviewing court must address three separate inquiries: (1) Does the punishment for the crime conform with contemporary standards of decency? (2) Is the punishment grossly disproportionate to the offense? (3) Does the punishment go beyond what is necessary to accomplish any legitimate penological objective? Id. Moreover, in Harris, 844 S.W.2d at 602-603 (citing Harmelin, 501 U.S. at 997-1009, 2702-2709(Kennedy, Justice, concurring in part), the court, noting that Article I, Section 16 of the Tennessee Constitution is subject to a more expansive interpretation than the Eighth Amendment to the federal constitution, held that the proportionality inquiry is necessary even in noncapital cases.

In addressing the appellant's challenge to his sentences, we initially note our prior holding that the statutory requirement, that a child rapist serve the entire sentence imposed by the court, does not constitute cruel and unusual punishment. State v. Holt, No. 03C01-9408-CR-00275, 1995 WL 491025, at *1 (Tenn. Crim. App. at Knoxville, August 17, 1995). Moreover, we can summarily dispense in this case with the appellant's assertions that the authorized punishment for his offenses either offends contemporary standards of decency or exceeds what is necessary to accomplish a legitimate penological objective. Aside from first degree murder, the rape of a child is the most heinous crime a person can commit in our society. Additionally, this court has recently observed that criminal statutes prohibiting incestuous relationships reflect society's belief that incest destabilizes the

35

family unit, threatening our society's ability to function in an orderly manner. Smith v. State, No. 01C01-9811-CR-00438, 1999 WL 160992, at *6 (Tenn. Crim. App. at Nashville), perm. to appeal denied, (Tenn. 1999). Thus, the authorized punishment for the appellant's offenses is reasonably related to the State's legitimate interest in deterring the rape of children and in prohibiting sexual activity between those related within the proscribed degrees of kinship. Id. at *6; State v. Holder, No. 01C01-9501-CC-00015, 1996 WL 125905, at *4 (Tenn. Crim. App. at Nashville, March 22, 1996).

Moreover, with respect to the appellant's proportionality challenge, our supreme court in Harris, 844 S.W.2d at 603, set forth the applicable analysis:

> [T]he sentence is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends - - the sentence is constitutional. In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2) the sentences imposed for commission of the same crime in other jurisdictions.

We conclude that there is no inference of gross disproportionality under the facts of this case. Accordingly, the appellant's argument is without merit.[9]

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____
Norma McGee Ogle, Judge

CONCUR:

_____

[9]The appellant cites Workman v. Commonwealth, 429 S.W.2d 374 (Ky. 1968), in support of the proposition that his punishment is cruel and unusual. However, the Supreme Court of Kentucky was addressing a sentence of life without possibility of parole imposed upon a juvenile offender for the offense of rape. Id. at 377. The Kentucky court specifically upheld the constitutionality of imposing such a sentence upon an adult offender. Id. See also Land v. Commonwealth, 986 S.W.2d 440, 441 (Ky. 1999).

_____
Jerry L. Smith, Judge


_____
Joe G. Riley, Judge